# CIRCUIT COURT OF THE CITY OF CHESAPEAKE

Commonwealth of Virginia

v.

Airika Liljegren.

April 22, 2014

Case Nos. (Criminal) CR 14-111-00 to 14-111-02

BY JUDGE JOHN W. BROWN

On April 10, 2014, counsel appeared for argument regarding two motions filed by the defendant: (1) a motion to suppress oral statements; and (2) a motion in limine to generally exclude crime scene and/or autopsy photographs. In court, the motion in limine was taken under advisement until the time of trial for the defendant to specifically select which photographs she wishes to exclude and for what reason(s). For the reasons that follow, the Court denies the motion to suppress.

## I. *Factual Background*

The Chesapeake Police Department arrested the defendant at approximately 12:25 p.m. on July 25, 2013, on suspicion of murder; she was handcuffed and placed in the back seat of a marked police vehicle. Detective Ronald Young testified that he advised the defendant of her *Miranda* rights at 1:20 p.m., but did not have the defendant sign a *Miranda* waiver. There is no recording of the defendant's receiving the *Miranda* warnings. Following an interview with Detective Young, the defendant was placed in another police car, where she was interrogated by Detective Patricia Maloney. Detective Young informed Detective Maloney that the defendant had been advised of her *Miranda* rights.

After approximately an hour of this interrogation, the defendant said, "I've always been told not to talk to the police and my lawyer friends tell me: 'Talk to a lawyer first'." Detective Maloney continued questioning the defendant for approximately an hour and a half, during which time the

defendant's story remained fairly consistent. At no time did the defendant ask for an attorney or request that the questioning be suspended.

The defendant was subsequently transported to Chesapeake Police headquarters, where Detective Young continued interrogating her. At this point, seven hours had elapsed since Detective Young initially Mirandized the defendant. An hour into this interrogation, the defendant made statements inconsistent with those she previously provided.

## II. *Analysis*

### A. *Administration of Miranda*

On brief and through counsel, the defendant claims that she was not given *Miranda* warnings and that the Commonwealth bears the burden of proving *Miranda* waiver by a preponderance of the evidence.

Detective Young testified that he administered *Miranda* warnings to the defendant, and the Court finds his testimony credible. In the absence of any evidence to the contrary, the Court concludes that the defendant was advised of her *Miranda* rights. That the defendant's *Miranda* waiver was not in writing or recorded does not provide evidence that it did not occur, but rather only reflects things that admittedly were not done, contrary to the allegations of counsel. There is no requirement that said warnings be in writing or recorded. *E.g., Angel v. Commonwealth*, 281 Va. 248, 259 (2011) ("*Miranda* neither requires a waiver to be in writing or verbally expressed, nor does it preclude the conclusion that a waiver occurred based on the suspect's course of conduct.").

### B. *Invocation of the Right to Counsel*

It is axiomatic that a defendant's invocation of the right to counsel must be "clear, unambiguous, and unequivocal." *Zektaw v. Commonwealth*, 278 Va. 127, 136 (2009). The Supreme Court of Virginia has explicated these criteria in numerous opinions. *See, e.g., id.* at 138 ("I'd really like to talk to a lawyer because this — oh my God, oh, my Jesus, why?" is sufficient); *Commonwealth v. Hilliard*, 270 Va. 42, 51 (2005) ("Can I have someone else present too, I mean just for my safety, like a lawyer like y'all just said?" is not sufficient); *Commonwealth v. Redmond*, 264 Va. 321, 330 (2002) ("Can I speak to my lawyer? I can't even talk to [a] lawyer before I make any kinds of comments or anything?" is not sufficient). In *Stephens v. Commonwealth*, 283 Va. 296 (2012), the Court held that, in context, the statement: "That's what I want, a lawyer, man" was not unambiguous to the point that it required the cessation of questioning and allowed the interviewing officers to clarify whether the defendant actually wanted an attorney. *Id.* at 302–04.

Chaney: You wanna, you want to talk to us some more?

Stevens: Ya'll want to talk to me or something?

Chaney: Yeah. You want to talk to us?

Stevens: Ya'll want to talk to me? I ain't doing nothing [inaudible] sitting.

Chaney: Well reason we ask is cause we brought you back over that, this morning you asked for me, and we brought you back over here the reason I'm asking you is because your rights still apply. You still understand your rights?

Stevens: I have the right to remain silent.

Nicholson: Yeah.

Chaney: Everything that I read you last night, do you still understand your rights?

Stevens: Mm-hmm.

Chaney: You can have a lawyer present if you want one.

Stevens: I want, that's what I need. I want to know what's, you know what I'm saying.

Chaney: You can stop answering at any time.

Stevens: That's what I want, a lawyer, man.

Chaney: You do want a lawyer.

Stevens: I mean, that's what I thought they brought me up here for today.

Nicholson: Well they gonna appoint you a lawyer. I mean you gonna get a lawyer.

Chaney: The question is do you want a lawyer before you talk to us again or are you willing to talk to us?

Stevens: I mean I'll listen to ya but you already said if I could stop if I wanted.

Chaney: Stop answering at any time you want to.

Stevens: I'll listen to what you got to say. If you want — if I say something — if I feel I don't want to say no more ya'll done told me I can stop.

Nicholson: Yes sir.

Chaney: Stop any time you want to.

*Id.* at 299–300.

Moreover, the statement " 'I'll be honest with you, I'm scared to say anything without talking to a lawyer' is [merely] an expression of a defendant's 'reservation about the wisdom of continuing the interrogation without consulting a lawyer; however, it does not clearly and unambiguously communicate a desire to invoke his right to counsel'." *Zektaw*, 278 Va. at 137 (quoting *Midkiff v. Commonwealth*, 250 Va. 262, 265, 267 (1995)).

The statement at issue in the instant case is of a similar nature: "I've always been told not to talk to the police and my lawyer friends tell me: 'Talk to a lawyer first'." It is at most the expression of a reservation about speaking to law enforcement officers without an attorney. *See id.* Therefore, this Court holds that, under *Midkiff* and the above-discussed precedents, Liljegren did not clearly and unambiguously invoke her right to counsel.

## C. *Staleness of Miranda*

The defendant also argues that, even if she was advised of her *Miranda* rights by detective Young, her statements to the police should be suppressed because the officers should have reissued the warnings before the third interview, which was conducted with a second police officer, the original interrogator, Detective Young, at a new location, seven hours after the initial *Miranda* advisement. She maintains that there are no Virginia authorities directly on point, but other courts have considered the issue of initial *Miranda* warnings going "stale," and have determined a number of factors relevant to deciding whether the warnings must be reissued. Cited for the Court's review were *United States v. Jones*, 147 F. Supp. 2d 752 (E.D. Mich. 2001), and *Commonwealth v. Wideman*, 334 A.2d 594 (Pa. 1975).

This Court, however, need not consider these factors, as the Supreme Court of Virginia and the Court of Appeals have held: "Where a defendant has received *Miranda* warnings and has given a knowing and intelligent waiver of his constitutional rights, the waiver is presumed to continue through subsequent interrogations until he manifests a desire to revoke it." *Frye v. Commonwealth*, 231 Va. 370, 378 (1986) (citing *Washington v. Commonwealth*, 228 Va. 535, 548 (1985)); *see also Harrison v. Commonwealth*, 244 Va. 576, 584 (1992); *Shell v. Commonwealth*, 11 Va. App. 247, 252–53 (1990) ("Virginia is not alone in holding repeated *Miranda* warnings are not mandatory once an accused has waived his rights.").

The evidence in the instant case demonstrates that the defendant waived her constitutional rights by speaking to the detectives after receiving the *Miranda* warnings. She took no actions manifesting a desire to revoke her waiver of *Miranda*. The Court, therefore, holds that there is no basis to suppress the defendant's inconsistent statements provided more than seven hours after she was initially Mirandized.

## III. *Conclusion*

For the reasons stated above, the Court denies the defendant's motion to suppress.